**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MICAH MITCHELL, individually and<br>as representative of the Estate of Debrina<br>Mitchell, and as Next Friend of<br>KENNETH MITCHELL, OSHEANNA<br>MITCHELL, and MICAH RASHUN<br>MITCHELL,<br><br>      Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY and<br>BILLINGSLEY FORD OF LAWTON,<br>INC.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-05-0379-F<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

I.  Motion to Reconsider

Plaintiff's "Motion for Reconsideration of the Denial of Plaintiff's Motion to Remand," filed June 6, 2005, is before the court.  (Docket entry no. 24.)  Defendants have responded, plaintiffs have replied, and the motion is ready for determination.

Plaintiffs' motion for reconsideration correctly observes that when the court denied the motion to remand in its Order of May 27, 2005, it overlooked the question of how 28 U.S.C. § 1441(b) impacts the issue.  Section 1441(b) provides that "an action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  The court appreciates that provision having been brought to its attention via the motion for reconsideration.  The fact that §1441(b) was cited nowhere in plaintiff's motion to remand may have had something to do with the court's failure to focus on that section.

The original motion to remand discussed diversity jurisdiction (at pp. 3-4), which is a different issue, and none of the original briefing by either party addressed §1441(b)'s ban on removal when there is a local defendant.

Regardless, the question which appeared to be addressed in the original briefing, and which was therefore addressed in the May 27 Order, was whether Billingsley Ford of Lawton, Inc. (Billingsley) had been fraudulently joined as a defendant in this action in order to defeat diversity jurisdiction.[1]  In denying remand, the court did not decide the fraudulent joinder issue because it was obvious from the briefs that, with or without Billingsley, diversity jurisdiction existed.  It is this denial which plaintiffs now ask the court to reconsider, based on their new (or at least now explicitly made) argument that removal was improper under §1441(b) because Billingsley is a citizen of Oklahoma, the state in which the action was brought.

Before ruling on the motion to reconsider, the court must address a preliminary procedural question:  whether failure to comply with § 1441(b) is an objection which plaintiffs have waived by not raising it sooner.  The answer depends upon whether the bar of §1441(b) is a procedural matter which may be waived if not asserted in a timely manner, or a jurisdictional matter which may be considered by the court at any time.  16 Moore's Federal Practice, Third Edition §107.14[2][e].  Almost all of the circuits have held that the ban is procedural so that the defect is waived if the plaintiff does not move to remand on this ground within 30 days of the notice of removal.  *Id.*  In the Tenth Circuit, this type of § 1441(b) problem appears to be considered a procedural defect subject to waiver.  For example, in American Oil Company v. McMullin, 433 F.2d 1091,1093 (10th Cir. 1970), this defect was held waived where

---

[1]Contributing to the confusion, Ford's briefs, even now, continue to characterize the issue as whether Billingsley's presence defeats removal because it defeats diversity jurisdiction. *See,* Ford's response to motion for reconsideration at pp. 1, 2,5, referring several times to "defeating diversity jurisdiction," and arguing, for example at p. 5, that "Plaintiff's joinder of Billingsley in this action, for the sole purpose of defeating diversity jurisdiction, is fraudulent."

the plaintiff had not objected to the removal, had stipulated to the transfer of a related case from another jurisdiction, had moved to consolidate the transferred case and the removed case, had moved to amend the complaint in federal court, and had moved in federal court for an order to sell the subject motor vehicles.

Here, in contrast to the plaintiff in <u>American Oil</u>, plaintiffs objected to removal from the outset.  Furthermore, any ruling as to whether §1441(b) requires remand will require determination of the same underlying issue which was raised by the parties' original briefing, that is, whether Billingsley was fraudulently joined.  Given this identity of issues, plaintiffs' §1441(b) argument is one which they may have intended to raise all along.  In any event, Ford, as the removing party, has not argued that plaintiffs waived their §1441(b) argument by failing to raise it within 30 days of the notice of removal.

For these reasons, the court finds and concludes that the § 1441(b) bar identified by plaintiffs in their motion to reconsider is a procedural defect subject to waiver if not raised within 30 days of removal, but that, in the circumstances of this case, there has been no waiver and it would be an abuse of discretion to refuse to reconsider the remand issue.  Plaintiffs' Motion for Reconsideration is **GRANTED**.

II.  Motion to Remand

As already stated, the underlying issue is whether Billingsley was fraudulently joined, a question which was originally briefed with respect to the motion to remand and which was briefed again with respect to the motion to reconsider.  All briefing is now complete, and the motion to remand is ready for determination.

A.  Standards

The case law places a heavy burden on a party asserting fraudulent joinder. Montano v. Allstate Indemnity, 211 F.3d 1278, 2000 WL 525592 at *1 (10th Cir.).[2] To prove fraudulent joinder, the removing party must demonstrate that there is no possibility plaintiffs would be able to establish a cause of action against the joined party.  *Id.* at *1-*2 quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000). The removing party claiming fraudulent joinder must prove the non-liability of the defendant as a matter of fact or law.  Hale v. Mastersoft International Pty. Ltd., 93 F. Supp. 2d 1108, 1113 (D. Colo. 2000), citing Blackwood v. Thomas, 855 F. Supp. 1205, 1207 (D. Colo. 1994).

To the extent the issue is a factual one, the court initially resolves all disputed questions of fact in favor of the non-removing party.  Montano, *supra* at *1-*2.  A removing defendant who pleads fraudulent joinder must support his claim with clear and convincing evidence.  Hart v. Wendling, 505 F. Supp. 52, 53 (W.D. Okla. 1980). While an allegation of fraudulent joinder permits the court to pierce the pleadings, it is not proper for the court to pre-try issues of liability on a motion to remand.  Hale, *supra* at 1113.  In determining whether there was fraudulent joinder, it is appropriate to consider evidence submitted in affidavit form, and to take facts submitted in affidavit form but not challenged by counter affidavits or other evidence, as established.  *See*, Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 409 (10th Cir. 1958) (finding individual defendants fraudulently joined after review of affidavits).

To the extent the issue is one of law, as already stated, the court must determine whether there is any possibility of recovery in state court against the party whose joinder is in question.  Montano, *supra* at *1-*2.  The legal standard is more exacting

---

[2]Montano is an unpublished decision cited here according to the requirements of 10th Cir. R. 36.3 as a decision which assists the court in its disposition.

than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6);  indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced.  <u>Montano, supra</u> at *2.  A claim which can be dismissed only after an intricate analysis of the state law is not so wholly unsubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.  <u>Montano, supra</u> at *2.  All ambiguities in the controlling law are resolved in favor of the non-removing party.  <u>Montano, supra</u> at *1.  Finally, remand is required if any one of the claims against the non-diverse defendant is possibly viable.  <u>Montano, supra</u> at *2.

<u>B.  Facts</u>

Applying the above standards to the evidence and arguments before the court, and having construed all inferences and disputed facts in plaintiffs' favor, the court finds that the following events are either undisputed in fact, or are taken as true, for purposes of this motion.

A 2001 Ford Explorer Sport vehicle was involved in a single vehicle roll-over accident on or about October 22, 2003, in Clay County, Texas.  Debrina Mitchell, the deceased wife of plaintiff Mr. Micah Mitchell and mother of the Mitchell children, suffered fatal injuries in that accident.

The Explorer had been purchased from Overseas Military Sales Corporation, a motor vehicle dealer located in Woodbury, New York.  OMSC assists military personnel who are serving overseas in purchasing vehicles to be either shipped overseas or to the location of their choice in the United States.  OMSC advertises itself as a distributor for various manufacturers.  OMSC purchased the Explorer from Ford and had it shipped to Martin Ford Sales, Inc. in Union Grove, Wisconsin.  After OMSC sold the Explorer to Mr. Mitchell, OMSC had the Explorer drop-shipped to Billingsley in Lawton, Oklahoma where it would be delivered to Mr. Mitchell.  The

evidentiary materials in the record establish beyond doubt that Micah Mitchell bought the Explorer from OMSC, an entity he has chosen not to sue.

The Explorer did not come from Billingsley's inventory, and Billingsley never held title to or had ownership of the vehicle.  Billingsley did not sell the Explorer.  Billingsley acted as a service provider.  It placed its logo and license plate frame on the Explorer.  Billingsley did not earn a commission from either Ford or OMSC arising out of the sale of the Explorer.  There is no information before the court as to how or whether Billingsley otherwise profited or benefitted from its role in the transaction, but the court takes it as an established fact that Billingsley did both as a result of its role in the transaction.

Mr. Mitchell was told by OMSC that OMSC "had a dealership in Lawton, Oklahoma" where he could pick up the Explorer.  When, at the instruction of OMSC, Mr. Mitchell went to Billingsley to pick up the Explorer, Mr. Mitchell provided Billingsley with paperwork from OMSC.  The Billingsley salesman asked for Mr. Mitchell's driver's license and asked Mr. Mitchell to  return in a couple of hours because the salesman needed to get the car washed and ready for Mr. Mitchell.  Mr. Mitchell then left the dealership and returned in two hours.

After Mr. Mitchell returned to Billingsley, and before delivering the Explorer to Mr. Mitchell, the Billingsley salesman did more than simply receive the vehicle from OMSC and hand the keys to Micah Mitchell, to paraphrase plaintiffs' brief.  (Motion for Leave to File Plaintiffs' Reply, p. 2.)  For example, a Billingsley representative performed a complete walk-through of the Explorer with Mr. Mitchell, making representations about the safety features of the car and its performance.  The salesman instructed Mr. Mitchell on the operation of many of the features of the Explorer, including numerous safety features.  He never told Mr. Mitchell anything about the Explorer's propensity to roll or about problems with the Explorer's roof design.  The salesman advised Mr. Mitchell that the Explorer came with a bumper to

bumper warranty and said that if Mr. Mitchell ever had a problem with the vehicle, to bring it back to Billingsley.  The only person who provided Mr. Mitchell with any information related to the safety and operation of the Explorer was the Billingsley salesman.  He provided Mr. Mitchell with the operator's manual, showed Mr. Mitchell how to work safety features like the locking devises, showed Mr. Mitchell where the spare tire was located, and made sure that Mr. Mitchell understood how to operate all of the features of the Explorer.

Mr. Mitchell relied upon the salesman as the Billingsley representative advising him regarding the features of the Explorer.  Mr. Mitchell considered Billingsley to be his dealer.  Mr. Mitchell took the Explorer  back to Billingsley for oil changes and other check-ups offered by Billingsley.  Mr. Mitchell recalls at least two occasions when the Explorer was taken back to Billingsley.

### C.  Individual Claims

Based on the above facts, the court next considers whether there are any possibly viable claims for recovery against Billingsley.[3]

In Oklahoma, manufacturers' products liability includes "processors, assemblers, and all other persons who are similarly situated in processing and distribution." Kirkland v. General Motors Corp., 521 P.2d 1353, 1361 (Okla. 1974). The products liability doctrine does not apply to every party which may handle a product during the distribution process.  *See*, Allenberg v. Bentley Hedges Travel Serv. Inc., 22 P.3d 223 (Okla. 2001)(manufacturers' product liability does not apply

---

[3]The Petition alleges the following theories of liability: design defect (Count IV), manufacturing and marketing defect (Count V), negligence, gross negligence and punitive damages (Count VI), breach of the warranty of merchantability (Count VII), deceit (Count VIII), and wrongful death (Count X).  For purposes of this discussion, and based on the manner in which plaintiffs describe their own claims (at p. 3 of the motion to remand), plaintiffs' claims are grouped as follows for purposes of this Order: strict product liability claims, negligence claims, a claim for breach of implied warranty of merchantability, and a deceit claim.

to commercial sellers of used goods); Gonser v. Decker, 814 P.2d 1056, 1058 (Okla. Ct. App. 1991) (declining to extend strict liability in tort to cover a defendant who is neither a seller not a lesser but who allows its own equipment to be used in providing a service).  As stated in Dewberry v. LaFollette, 598 P.2d 241 (Okla. 1979), although commercial lessors  may be included in the doctrine on the basis that such persons put products into the stream of commerce in a manner "not unlike a manufacturer or retailer," "a casual or isolated transaction does not bring the doctrine into play."  *Id*. at 242.

Applying the language of Kirkland, here there are no facts or inferences to suggest that Billingsley was a processor, an assembler, or a party similarly situated to a processor or assembler.  To the contrary, Billingsley's relationship to the transaction was casual and isolated, exactly the type of relationship which the Oklahoma Supreme Court explained in Dewberry is not reached by the products liability doctrine.  Even if Billingsley acted as a distributor in some very narrow sense of that word, there is no evidence that Billingsley put the Explorer into the stream of commerce in the same way that a manufacturer or a retailer puts a product into the stream of commerce. Furthermore, on these facts, none of the public policy considerations which are served by Oklahoma's products liability law would be served by including Billingsley as a defendant.

Plaintiffs fare no better under the legal theory of negligence.  The court agrees with plaintiffs that there need not have been a sale, or a paid commission, or even a commercial benefit of any kind by Billingsley, in order for a negligence claim to be possibly available against Billingsley.  The court also agrees with plaintiffs that there may well have been a commercial benefit or profit to Billingsley as a result of its role in the transaction.  Indeed, the court takes the existence of a profit and other benefits as established facts for purposes of this motion.  The presence or absence of benefit, however, does not, alone, decide the matter.  What *does* decide whether a negligence

claim lies here, is whether there was a duty on Billingsley's part toward the plaintiffs. In Oklahoma, the existence of a duty depends on the relationship between the parties and the general risks involved in the common undertaking.   Woolard v. JLG Industries, Inc., 210 F.3d 1158, 1170 (10th Cir. 2000), quoting Oklahoma law as stated in Wofford v. Eastern State Hosp., 795 P.2d 516, 519 (Okla. 1990).   The common undertaking between Billingsley and the plaintiffs was an extremely limited one.   It involved delivery of a car, a walk-through, operating instructions, explanations or discussions of safety features and warranties, and like conduct associated with providing the car to the plaintiffs.   The relationship between Billingsley and the plaintiffs had nothing to do with the risk of a roll-over accident.   Moreover, even if there were facts suggesting an arguable duty to warn or to disclose, there are no facts to suggest that a violation of any such duty by Billingsley was a proximate cause of the roll-over accident.

With respect to the breach of warranty claim, it is undisputed that Billingsley was not the seller of the Explorer and that Billingsley was not involved in the negotiation or finalization of the sale.   The discussion of any warranties consisted of general statements, such as that the Explorer came with bumper to bumper warranties. There is no evidence that Billingsley, itself, extended any warranties to plaintiffs.

Likewise with respect to the deceit claim, it is undisputed that Billingsley was not a party to the sales transaction.   There are no facts suggesting a possibly viable deceit (or fraud) claim against Billingsley.

For these reasons, after consideration of each of plaintiffs' possible theories of recovery against Billingsley, the court concludes, with a high degree of confidence, that there is not, and cannot be, any legally and factually plausible theory upon which plaintiffs' claims arising from this tragic roll-over accident might be asserted against Billingsley.   Ford, as the removing party, has carried its heavy burden to show that there is no possibility plaintiffs would be entitled to any recovery against Billingsley.

It necessarily follows from this conclusion that Billingsley was fraudulently joined to defeat removal.

### III.  Conclusion

Having carefully considered the parties' submissions, the record, and the relevant arguments and authorities, the court rules as follows.

Plaintiffs' "Motion for Reconsideration of the Denial of Plaintiffs' Motion to Remand" (docket entry no. 24) is **GRANTED**.

Upon reconsideration of its earlier denial of the motion to remand, the court has determined that there is no possibility of a viable claim against Billingsley and that Billingsley was fraudulently joined as a defendant in order to render removal improper under §1441(b).  Therefore, Billingsley Ford of Lawton, Inc. is hereby **DISMISSED** from this action with prejudice.

As Billingsley's dismissal leaves no defect in the removal under §1441(b), the ground which the court now understands plaintiffs assert in support of their motion to remand, there is no basis for a remand.  Plaintiffs' "Motion to Remand" (docket entry no. 11) is therefore **DENIED**.

To the extent that the court's Order of May 27, 2005 (docket entry no. 22) denied remand on grounds other than § 1441(b), that Order is **VACATED**. Otherwise, the May 27 Order stands as a reflection of the procedural history of the motions decided in the instant Order, and as this court's determination that complete diversity exists in this action.

Dated this 5th day of July, 2005.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0379p006(pub).wpd